NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
**PEDRO NICOLAS SEGURA,**          :
: Civil Action No. 15-6821 (MLC)
**Petitioner,**         :
:
v.                                 : OPINION
:
**UNITED STATES OF AMERICA,**      :
:
**Respondent.**         :
_____:

**COOPER, DISTRICT JUDGE**

Presently before the Court is the Petition of Pedro Nicolas Segura ("Petitioner") brought pursuant to 28 U.S.C. § 2255. (Dkt. No. 1.) In response to this Court's Order to Answer (Dkt. No. 5), Respondent United States of America ("Respondent") filed its response (Dkt. No. 7). Petitioner did not file a reply. For the following reasons, the Court denies the Petition, and declines to issue a certificate of appealability

**I. FACTUAL AND PROCEDURAL HISTORY**

Petitioner immigrated illegally to the United States in or around 1986. (Presentence Investigation Report ("PSR") ¶ 40.) Approximately five years later, in two separate incidents, Petitioner was convicted of forging a United States Treasury check and assaulting an individual with a machete. (*Id.* ¶¶ 26- 27.) On or about September 13, 1996, Petitioner was convicted in New Jersey Superior Court for attempted sexual assault of a minor, in violation of N.J.S.A. 2C:5-1, 2C:14-2b(1), and 2C:14-2b(1). (*Id.* ¶ 28.) Petitioner completed his prison sentence in March 2001 and was released into immigration custody. (*Id.*) On or about June 15, 2001, Petitioner was deported. (*Id.*)

Despite never having obtained permission to re-enter the United States, on or about February 27, 2006, Petitioner was found in New Jersey when he attempted to renew his driver's license using a fictitious social security card. (*Id.* ¶ 29.)  On or about May 31, 2007, Petitioner was arrested for failure to register as a sex offender in violation of New Jersey law. (*Id.* ¶ 30.)  On or about June 11, 2007, he was charged with illegal reentry into the United States, in the District of New Jersey. (*Id.* ¶ 31.)  Petitioner was convicted of illegal reentry into the United States and sentenced to forty-five months in custody and three years of supervised release. (*Id.*)  Petitioner was released by the Bureau of Prisons on September 15, 2010 and deported on or about October 1, 2010. (*Id.*)  At an unknown time, Petitioner once again illegally re-entered the United States and was found by the police during a traffic stop on or about May 7, 2013. (*Id.* ¶ 32.)  Petitioner was again charged with illegal reentry on or about November 12, 2013. (*United States v. Segura*, Crim. No. 14-498 (MLC), Dkt. Entry No. No. 1.)

On September 3, 2014, Petitioner pled guilty to a one-count information charging Petitioner with illegal reentry, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). (*Segura*, Crim. No. 14-498 (MLC), Dkt. Nos. 15, 16.)  Petitioner was sentenced on February 5, 2015. (*Id.* at Dkt. No. 18.)  According to the PSR, Petitioner's criminal history category was a VI, and the appropriate guideline imprisonment range was seventy-seven to ninety-six months. (PSR ¶ 64.)  At sentencing, the Court granted Petitioner a variance of seven months, and sentenced him to a prison term of seventy months, and three years of supervised release. (*Segura*, Crim. No. 14-498 (MLC), Dkt. No. 19.)  Petitioner did not file an appeal.

On September 1, 2015, Petitioner filed the instant Section 2255 Petition and a supporting memorandum of law. (Dkt. No. 1.)  After the Court administratively terminated this action for failure to use the correct form (Dkt. No. 3), Petitioner filed an Amended Petition (Dkt. No. 4).  In

his Amended Petition, Petitioner raises two grounds for relief: (1) "whether or not counsel failed to provide effective assistance with respect to the fast track early disposition program to reentry defendant and that program is available in the District of New Jersey and the Third Circuit;" and (2) "whether or not counsel failed to provide effective assistance of counsel by not requesting to participate into the 'fast track' early disposition program and due to counsel ineffectiveness, defendant received a longer sentence in comparing with other in the same charge which receives shortless [sic] sentence." (Am. Pet. ¶ 12.) Respondent filed its Answer (Dkt. No. 7) and Petitioner did not file a reply.

## II. DISCUSSION

### A. Legal Standard

#### 1. 28 U.S.C. § 2255

A prisoner in federal custody under a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon the grounds that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; or (3) "the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A court, in considering a § 2255 motion, must accept the truth of a movant's factual allegations unless they are frivolous on the basis of the existing record. *See United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). A court must "give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). A court may deny the motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## 2. Ineffective Assistance of Counsel

The Sixth Amendment guarantees each criminal defendant not just assistance but effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-pronged test for demonstrating ineffectiveness.

First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the particular acts or omissions that are challenged as unprofessional. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, then counsel's strategic choices are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice means that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted). In the context of a guilty plea, the prejudice prong requires that defendant "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

### 3. "Fast Track" Programs

The Department of Justice's "fast track" program offers an incentive to defendants in illegal re-entry cases to plead guilty and waive certain appellate and collateral attack rights in exchange for a downward departure from the adjusted base offense level. The Third Circuit has provided the background and history of these "fast track" programs:

> They sprang up in federal judicial districts along the Mexican border, starting in Southern California, in the mid-1990s. Local U.S. Attorneys instituted these programs as an administrative mechanism to address the increase in their immigration caseload, such as the

>rise in prosecution of illegal reentry offenses, and to create a process for faster and more efficient disposition of these cases. U.S. Sentencing Comm'n, Report to Congress, Downward Departures from the Federal Sentencing Guidelines, at 65 (Oct.2003) (hereinafter "Sentencing Commission Report").
>
>In 2003, Congress took note of this growing pattern. Through the PROTECT Act, it sanctioned these programs under certain circumstances. PROTECT Act, § 401(m)(2)(B), 117 Stat. at 675; see also Sentencing Commission Report, at 56, 62.  The Act, passed pre-*Booker*, was part of a more general effort by Congress to deal with a perceived increase in the rate of departures from the Sentencing Guidelines. PROTECT Act, § 401(m)(2)(A), 117 Stat. at 675; *see also* Sentencing Commission Report, at 56 (explaining that Congress amended 18 U.S.C. § 3553(c) (statement of reasons for imposing a sentence) and § 3742 (review of a sentence) to facilitate meaningful appellate review of sentences, particularly departure decisions).
>
>Specifically concerning fast-track districts, the Act directed the Sentencing Commission to promulgate "a policy statement authorizing downward departures of no more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, § 401(m)(2)(B), 117 Stat. at 675. Shortly thereafter, in October 2003, the Sentencing Commission created Guideline § 5K3.1, which provides that, "upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the [Attorney General] and the United States Attorney for the district in which the court resides." This language tracks that of the PROTECT Act essentially verbatim.

*United States v. Arrelucea-Zamudio*, 581 F.3d 142, 145–46 (3d Cir. 2009).

In response to the PROTECT Act, in 2003, the Attorney General issued a memorandum to all federal prosecutors discussing Department of Justice policies relating to authorization and administration of fast-track programs. *Id.*  Thereafter, in 2012, the Department "revis[ed] its fast-track policy and establish[ed] uniform, baseline eligibility requirements for any defendant who qualifies for fast-track treatment, regardless of where that defendant is prosecuted." (Answer, Ex.

B, DOJ Memorandum on Fast-Track Programs, January 31, 2012, Dkt. No. 7-2.) The revised policy provides in relevant part:

> Districts prosecuting felony illegal reentry cases (8 U.S.C. § 1326)—the largest category of cases authorized for fast-track treatment—shall implement an early disposition program in accordance with the following requirements and the exercise of prosecutorial discretion by the United States Attorney:
>
> A. Defendant Eligibility. The United States Attorney retains the discretion to limit or deny a defendant's participation in a fast-track program based on —
>
> (1) The defendant's prior violent felony convictions (including murder, kidnapping, voluntary manslaughter, forcible sex offenses, child-sex offenses, drug trafficking, firearms offenses, or convictions which otherwise reflect a history of serious violent crime);
>
> (2) The defendant's number of prior deportations, prior convictions for illegal reentry under 8 U.S.C. § 1326, prior convictions for other immigration-related offenses, or prior participation in a fast-track program;
>
> (3) If the defendant is part of an independent federal criminal investigation, or if he or she is under any form of court or correctional supervision; or
>
> (4) With supervisory approval, circumstances at the time of the defendant's arrest or any other aggravating factors identified by the United States Attorney.
> …
>
> D. Additional Provisions of a Plea Agreement. If the above conditions are satisfied—including those imposed at the discretion of the United States Attorney as provided for in Section C(4)—the attorney for the Government shall move at sentencing pursuant to Sentencing Guidelines Section 5K3.1 for a downward departure from the adjusted base offense level found by the District Court (after application of the adjustment for acceptance of responsibility) as follows: Four levels for all defendants, except those with a criminal history category VI or with at least one felony conviction for a serious violent offense. For the latter

>category, if the defendant is not excluded under Section A(1), the government may only offer a two-level departure, with supervisory approval and on a case-by-case basis after considering the interest of public safety.
>
>(*Id.*) (internal footnotes omitted).

## B. Analysis

Though the Petition is not entirely clear, it appears that Petitioner is arguing that counsel was ineffective for failing to properly advise him about the "fast track" program and for failing to seek participation for Petitioner in said program. (Pet. ¶ 12.)

Petitioner cannot meet either prong of *Strickland* for these claims. As discussed above, one of the factors to consider regarding eligibility for the fast track program is prior violent felony convictions, including child-sex offenses. Petitioner has a conviction for assault with a machete and attempted sexual assault of a minor. Another factor to consider is Petitioner's number of prior deportations and prior convictions for illegal reentry under 8 U.S.C. § 1326; Petitioner has two and one of those, respectively. Given Petitioner's criminal history, it is highly unlikely that he would have been eligible for the fast track program. *Cf. Arrelucea-Zamudio*, 581 F.3d at 156 ("to justify a reasonable variance by the district court, a defendant must show at the outset that he would qualify for fast-track disposition in a fast-track district. For example, a defendant's serious criminal history may disqualify him in most fast-track districts."). Because Petitioner would not have been eligible for the fast-track program, it certainly cannot be said that counsel's alleged failure to discuss the program with Petitioner, and seek participation, fell below an objective standard of reasonableness. *Strickland,* 466 U.S at 688.

With regard to the prejudice prong, the Court notes that Petitioner has not alleged that but for counsel's alleged failure to advise him about the "fast track" program, he would not have pled guilty and would have insisted upon going to trial. *See Hill*, 474 U.S. at 59. Nor would it have

been rational to do so since Petitioner had clearly re-entered the country without permission after he had been deported.  *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 486 (2000)) ("to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); *see also United States v. Scott*, No. 15-3126, 2016 WL 6574076 (3d Cir. Nov. 7, 2016).

In addition, as discussed above, Petitioner's criminal history and previous deportations would render him ineligible for the "fast-track" program.  Because he did not meet the requirements for the program, Petitioner clearly suffered no prejudice as a result of counsel's alleged failure to seek participation and therefore he also cannot meet the second prong of the *Strickland* analysis.

### III.  CERTIFICATE OF APPEALABILITY

The Court will deny a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

### IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Petition and decline to issue a certificate of appealability.  An appropriate order follows.

Dated: February 14, 2017

                                                   s/ MARY L. COOPER_____
                                                   Mary L. Cooper, U.S.D.J.